UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:21cr47 DRL-SJF |
| SETH CUMMINS, | |
| Defendant. | |

OPINION AND ORDER

On May 26, 2021, a grand jury indicted Seth Cummins on one count of knowingly distributing (on or about March 3, 2021) a substance containing methamphetamine. 21 U.S.C. § 841(a). More than three years passed. Not until October 2024 did he receive discovery and not until November 2024 did he have his initial appearance. He wants the indictment dismissed for a violation of his Sixth Amendment right to a speedy trial. *See* Fed. R. Crim. P. 12(b)(1), 12(b)(3)(A)(iii), 48(b). The court grants the motion and dismisses the indictment with prejudice.

BACKGROUND

These facts emerge from the evidence. *See* Fed. R. Crim. P. 12(d). In 2020, Mr. Cummins was charged with felony possession of methamphetamine and failure to appear in Kosciusko County (Cause No. 43C01-2002-F6-138), felony dealing of methamphetamine in Whitley County (Cause No. 92C01-2009-F3-873), and felony possession of methamphetamine and obstruction of justice in Kosciusko County (Cause No. 43C01-2012-F5-889) [87-2, 87-3, 89-1]. He appeared in each state case, but the government alleges he committed his federal offense while on state pretrial release in March 2021.

Just before his federal indictment, on May 10, 2021, Mr. Cummins was rearrested in the Whitley County case, and shortly after warrants issued in the other two cases. He thereafter remained in state custody. After his May 26, 2021 federal indictment, a federal arrest warrant issued on May 27, 2021 [14]. On October 12, 2022, Mr. Cummins filed a letter inquiring as to whether there was a federal indictment against him and requesting counsel and a hearing [42]. At this time, he was awaiting trial in Whitley County, which was scheduled for November 15-17, 2022 [87-3 at 12]. Mr. Cummins pleaded guilty to possessing methamphetamine in Whitley County and was sentenced on November 21, 2022 to four and a half years [*id.* 14].

Just before, on November 9, 2022, he filed a second letter requesting an appearance, this time to the presiding federal magistrate judge [90-1 (docketed with criminal complaint in Cause No. 3:21mj44)]. In January 2023, he pleaded guilty to possessing methamphetamine and obstructing justice in Kosciusko County, while his other Kosciusko County case was dismissed [87-2 at 8-9]. On March 2, 2023, he was sentenced to three years on the drug charge and one year for obstruction, these terms to run concurrently to each other but consecutively to the Whitley County sentence [*id.* 9]. He is still serving these state sentences, and he has an anticipated release date of June 6, 2026.

No one from the government responded to the 2022 letters on the docket, though an assistant United States attorney appeared on December 23, 2022 [44]. Throughout this time, the government actively prosecuted a codefendant (who was sentenced in January 2023). After his two letters, Mr. Cummins never wrote again to ask about the case or to request a speedy trial.

On September 13, 2024, the government moved for a writ of *habeas corpus ad prosequendum*, and the magistrate judge granted the motion on September 16, 2024 [74, 75]. Mr. Cummins had

his initial appearance on November 4, 2024 [82]. He now moves to dismiss the federal indictment because he says the government violated his Sixth Amendment right to a speedy trial.

## DISCUSSION

Mr. Cummins asserts only a Sixth Amendment violation, not one under 18 U.S.C. § 3161. *See United States v. White*, 443 F.3d 582, 588 (7th Cir. 2006) ("The two rights are related but distinct, so that a violation of one may be found without a violation of the other."). The Sixth Amendment guarantees every defendant in a criminal prosecution a fundamental right "to a speedy and public trial." U.S. Const. amend. VI; *see also Barker v. Wingo*, 407 U.S. 514, 515 (1972). The right is triggered by "an arrest, indictment, or some other official accusation." *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009).

"The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality in the need to have charges promptly exposed." *Dickey v. Florida*, 398 U.S. 30, 37 (1970). The right nonetheless tends to be a "more vague concept than other procedural rights" because it is "impossible to determine with precision when the right has been denied." *Barker*, 407 U.S. at 521. Recognizing this difficulty, and indeed the seeming literal sweep of the Sixth Amendment's language, the law requires "a functional analysis of the right in the particular context of the case." *Id.* at 522; *see also Doggett v. United States*, 505 U.S. 647, 651 (1992). This functional analysis balances four separate inquiries to evaluate the government's and defendant's conduct: "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice[.]" *Doggett*, 505 U.S. at 651; *see also Barker*, 407 U.S. at 530; *United States v. Harmon*, 721 F.3d 877, 882 (7th Cir. 2013).

A. *Length of Delay.*

The length of any delay is a dual threshold inquiry. *Doggett*, 505 U.S. at 651; *Harmon*, 721 F.3d at 882. First, without an "interval between accusation and trial [that] has crossed the threshold dividing ordinary from presumptively prejudicial delay," a defendant cannot complain that the government has denied him a speedy trial. *Doggett*, 505 U.S. at 651-52 (quotations and citation omitted). Second, the court will move to the other three factors only when a defendant can establish that "the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652.

The delay cannot be "uncommonly long," and generally the law requires a "more searching analysis" at eight or nine months, while it views delays "approaching one year to be presumptively prejudicial."[1] *White*, 443 F.3d at 589-90 (citing cases); *see also Loera*, 565 F.3d at 412; *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007) (three-year delay "significantly more than the length necessary"). The "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531.

This case more than suffices for further inquiry. The government indicted Mr. Cummins on May 26, 2021. The government never secured his first appearance until over three years later, on November 4, 2024. A trial was promptly scheduled for December 17, 2024. This 42-month delay meets—indeed well exceeds—the threshold. *See Doggett*, 505 U.S. at 652 (calculating delay from the indictment); *White*, 443 F.3d at 589 (accusation is triggering mechanism).

---

[1] As the phrase is used in this threshold context, "presumptive prejudice" merely "marks the point at which courts deem the delay unreasonable enough to trigger the [constitutional] enquiry" rather than "indicate[s] a statistical probability of prejudice." *Doggett*, 505 U.S. at 652 n.1.

The government inkles a calculation running from a later date to an earlier cutoff—the time from the conclusion of his final state prosecution on March 2, 2023 to the time the government sought a writ on September 10, 2024—but in error. One isn't the indictment, and the other isn't the trial. Even so, the government concedes that, even by its own calculation of 17 months, this factor requires inquiry into the remaining three factors.

This is truer still when the indictment charges only a single count of distributing a substance containing methamphetamine under 21 U.S.C. § 841(a)(1)—more akin to "street crime" than any complex conspiracy. *See Barker*, 407 U.S. at 531. The delay here crossed the threshold of ordinary to a presumptively prejudicial delay, and it stretched beyond the bare minimum needed to trigger judicial examination of the charge. *See Doggett*, 505 U.S. at 651-52.

B. *Reason for the Delay.*

The government must offer a reason for its delay, and different reasons merit different weight. *Barker*, 407 U.S. at 531; *United States v. Lockett*, 526 F.2d 1110, 1111 (7th Cir. 1975). A "deliberate attempt to delay the trial [] to hamper the defense should be weighted heavily against the government," *id.*; *see, e.g., United States v. Marion*, 404 U.S. 307, 325 (1971) (harassment an improper reason for delay), whereas "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily," *Barker*, 407 U.S. at 531. The "ultimate responsibility for such circumstances must rest with the government rather than with the defendant," just not as heavily. *Id.* Valid reasons, say a missing witness, may justify an appropriate delay altogether. *Id.*

This is a critical inquiry, for the "flag all litigants seek to capture is [this] factor." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). Restated a bit more directly, the government offers a two-fold explanation: that for the initial 22 months the government legitimately delayed its

prosecution based on Mr. Cummins' ongoing state prosecutions and state custody, citing *United States v. Richardson*, 780 F.3d 812, 816 (7th Cir. 2015), and that for the last 20 months the government had what it calls a "more neutral reason" by not regularly monitoring the status of these state prosecutions in two separate counties. This results in a more nuanced analysis.

The circuits split on the first rationale or at least the weight to give it. Some view competing state prosecutions as an obvious and legitimate reason for delaying a federal trial such that this factor will favor the government, *see, e.g., United States v. Schreane*, 331 F.3d 548, 554-55 (6th Cir. 2003); *United States v. Thomas*, 55 F.3d 144, 150-51 (4th Cir. 1995), whereas others accept or reject it as a plausible reason depending on whether the government offers a particularized showing why the excuse applies in an individual case, *see United States v. Seltzer*, 595 F.3d 1170, 1177-78 (10th Cir. 2010), whereas others have rejected it as a reasonable justification, *see United States v. Battis*, 589 F.3d 673, 680 (3rd Cir. 2009).

This circuit trends toward the first view. "When a person is credibly accused of violating both federal and state law, he exposes himself to prosecution by both federal and state authorities—and thus to two separate proceedings, which rarely can efficiently be conducted simultaneously." *Richardson*, 780 F.3d at 816. "[W]hen state and federal charges are lodged against a defendant[,] at least one sovereign . . . will have to wait its turn at the prosecutorial turnstile." *Id.* (citing *Schreane*, 331 F.3d at 554-55) (quotations omitted). "[W]aiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay that weighs in favor of the government." *Id.* (citation omitted).

The court will not question something the law declares "without question," though in fairness the court of appeals was answering in *Richardson* a narrower question as to whether the

6

speedy trial right even applied, and all balancing tests remain heavily reliant on the facts. In truth, in this court's experience, greater cooperation between state and federal authorities (at least locally) occurs during overlapping prosecutions, with writs regularly approved by the judiciary and managed by the United States Marshal Service to facilitate a defendant's presence before both authorities, *see also Dickey*, 398 U.S. at 36, and with prosecutors at times coordinating their cases; but other dynamics to these prosecutions can create real headwinds for both the government and defendant, indeed hardship at times, quite aside from the added safety risks and administrative costs, *see Schreane*, 331 F.3d at 554-55. That is no less true when Mr. Cummins faced not just dueling prosecutions but three in fact, including charges in two separate Indiana counties that themselves were seemingly sequenced. Like *Richardson*, the "custodial sovereign in this case was the State of Indiana," so it had first dibs. *Richardson*, 780 F.3d at 816.

At the same time, the government spurned this dilemma's model answer from *Richardson*. First, the government there filed a complaint and detainer only, but here the government secured an indictment. That is a trigger to a different clock. Even the court of appeals recognized this might reorder the balance. *See id.* (Posner, J., majority) (an indictment would have put the government "under pressure" to "proceed with all deliberate speed to trial"); *id.* at 819 (Hamilton, J., concurring) (second factor favored the government because it "chose to defer to the state prosecution"). On this record, the government began its prosecution, rather than deferred, and then took no action even to try to bring Mr. Cummins to trial in federal court for nearly 40 months, from May 26, 2021 (indictment) to September 10, 2024 (its first writ), and that leisure transcends mere prosecutorial patience. *See Smith v. Hooey*, 393 U.S. 374, 383 (1969).

Indeed, under *Smith*, the most basic demands of the criminal justice system that the Sixth Amendment protects "are both aggravated and compounded in the case of an accused who is imprisoned by another jurisdiction." *Id.* at 378. For instance, the accused may lose the possibility of a concurrent sentence and the "conditions under which he must serve his sentence [may be] greatly worsened." *Id.* And "a man isolated in prison is powerless to exert his own investigative efforts to mitigate [the] erosive effects [from] the passage of time," including the preservation of evidence and witnesses and their fresh recollections. *Id.* at 379-80. That is no less true here when Mr. Cummins lacked counsel in federal court who he would have received at or before his initial appearance and lacked discovery from the government until more than three years after the indictment. Though many defendants may be "content or even prefer to sit around and wait for witnesses to die or vanish or forget," *Richardson*, 780 F.3d at 817, a prosecuting sovereign that dawdles too long (and *Richardson* hypothesizes less time than exists today) might actually create a risk of serious prejudice to the defendant, *id.* at 818.

Second, quite unlike *Richardson*, the government never acted when Mr. Cummins twice demanded a speedy trial. This too the court of appeals noted as important to its analysis. For the majority, *Smith* held less sway because the defendant in *Richardson* never asked for a federal trial during his state confinement and had not yet been convicted or sentenced in state court. *Id.* For the concurrence, *Smith* would hold even more sway, except that the defendant "made no such effort" to "push[] for a speedy state trial." *Id.* at 820 (Hamilton, J., concurring) ("that's the decisive difference between the cases"). *Smith* reasoned that the state had an obligation, when the defendant demanded it, to "make a diligent, good-faith effort" to bring him from the federal government to trial in state court. *Smith*, 393 U.S. at 383; *see also Dickey*, 398 U.S. at 38 ("This is

8

brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State."). It seems backward to hold the state to its burden when a defendant sits in federal custody (notwithstanding his speedy trial demand) but excuse the federal government from its identical constitutional obligation when a defendant makes the same demand (twice) while he remains in state custody. *See Smith*, 393 U.S. at 383.

Brushing *Richardson*'s model aside, the government instead obtained an indictment, its official declaration of prosecution, on May 26, 2021. By indicting this early, the government started the speedy trial clock and created the very situation the law allowed the government to avoid there—"a messy clash of governments." *Richardson*, 780 F.3d at 816. The government chose to initiate this criminal proceeding against Mr. Cummins with state charges in progress, so it cannot argue—as compellingly—that it had an interest in avoiding the kerfuffle it created, particularly when Mr. Cummins requested a speedy trial that largely went unanswered. These were not overlapping charges; all drug charges to be sure, but the indictments charged him with drug crimes on different occasions. *See Seltzer*, 595 F.3d at 1178. In short, it was less a "good reason for the Justice Department to have barged into the state's proceeding by instituting an overlapping federal prosecution," *Richardson*, 780 F.3d at 816, and then to ignore the concomitant obligation to press speedily forward, or at least to try, *id.*; *Smith*, 393 U.S. at 383.[2]

There is no evidence that the government was motivated by bad faith, an aim to harass, or a litigative desire to secure a tactical advantage, either for the first 22 months or the subsequent 20 months, so there's nothing on this record to weigh heavily against the government on this

---

[2] The government faces a five-year statute of limitations for prosecutions under 21 U.S.C. § 841(a). *See* 18 U.S.C. § 3282(a). It certainly would not have had to choose between waiting for Mr. Cummins' state prosecutions to conclude and indicting Mr. Cummins for this federal charge. It likewise could have managed any potential claim of preindictment delay under the Fifth Amendment.

factor. Its rationale for the subsequent 20 months weighs against it, even if "less heavily." *Barker*, 407 U.S. at 531. The government was lax in monitoring the status of Mr. Cummins' state cases. Perhaps the government expected the State of Indiana to alert the government promptly that it finished its prosecutions of Mr. Cummins, but state prosecutors failed to notify, and the government failed to check. After a passage of considerable time, the government with reasonable diligence should have followed up. *See Schreane*, 331 F.3d at 556.

This isn't a malicious reason, *Barker*, 407 U.S. at 531, but it also isn't as justifiable as a novel or difficult legal issue, *White*, 443 F.3d at 590. The responsibility for the failure to monitor Mr. Cummins' status lies solely with the government. *See Barker*, 407 U.S. at 531. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight [the law] assign[s] to official negligence compounds over time as the presumption of evidentiary prejudice grows." *Doggett*, 505 U.S. at 657.

Twenty months of delay alone is of significant concern, even more so when the government ignores two written requests for the defendant's prompt appearance and trial. Such "persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the [g]overnment attaches to securing a conviction, the harder it will try to get it." *Id.* In the end, even affording the government some allowance for its delay during the first 22 months, there is more on this factor that weighs against the government than for it. This factor thus favors Mr. Cummins.

C. *Defendant's Assertion of the Right.*

The law on what exactly an accused person must do to assert the right is somewhat unclear, but generally any assertion of the right by the accused weighs in his favor, whereas a failure to assert the right weighs in the government's favor. "A defendant has no duty to bring himself to trial; the [government] has that duty as well as the duty of insuring that the trial is consistent with due process." *Barker*, 407 U.S at 527. Because there is no duty to assert the right, "the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." *Id.* at 528-29 (defendant has "some responsibility" to assert a speedy trial claim).

A defendant's assertion of a speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531-32. Something as simple as objecting to a continuance may be considered as asserting the right, *see White*, 443 F.3d at 590-91, or making "statements on three occasions that could be construed as asserting the right, twice in 2004 and once in [a] motion to sever in 2006," in which a defendant "opposed all continuances [] and [said] he wished to proceed to trial []." *Oriedo*, 498 F.3d at 600.

There is no doubt that Mr. Cummins asserted his right. First, he filed a letter on October 5, 2022 explicitly "requesting a speedy trial" [42]. He asked that an "initial appearance or arraignment be scheduled as soon as possible" and for appointed counsel [*id.*]. The government discounts this assertion of his right because it occurred while Mr. Cummins awaited trials in state court, but it isn't as though his request disappeared once his state cases concluded. Usually the government argues any assertion was untimely because the defendant waited too long, not that the defendant acted too promptly. And lest we forget, an indictment was pending.

In addition, Mr. Cummins followed with a second letter after his guilty plea in Whitley County, albeit before his sentence there and before his guilty plea or sentence in Kosciusko County, that indicated this state matter would be resolved by agreement and once more requesting an initial appearance and that any hold be lifted [90-1]. Perhaps his position would be stronger still if he had asserted his right to a speedy trial when his state cases concluded too, but it wasn't his responsibility to alert the government. He asserted his speedy trial right twice, and on this silent record the government rested on its laurels—even when, as the government concedes, it should have acted at the end of the state cases. At no time did Mr. Cummins dilute his assertion of this right with a request for a continuance. *See Oriedo*, 498 F.3d at 600. This factor thus weighs in his favor. *See Dickey*, 398 U.S. at 38.

D.  *Prejudice to the Defendant.*

This factor—whether the defendant suffered prejudice from the delay—"is the most important," *West v. Symdon*, 689 F.3d 749, 752 (7th Cir. 2012), though the law "expressly reject[s] the notion that an affirmative demonstration of prejudice [is] necessary to prove a denial of the constitutional right to a speedy trial," *Moore v. Arizona*, 414 U.S. 25, 26 (1973). None of the four factors, including this one, is "a necessary or sufficient condition to the finding of a deprivation of the right [to] speedy trial." *Barker*, 407 U.S. at 533.

This record presumes prejudice. A period of 42 months well exceeds the one year when prejudice presumptively becomes a searching inquiry, and all other factors, taken together, measurably favor Mr. Cummins. *See Doggett*, 505 U.S. at 652-58; *White*, 443 F.3d at 589-90; *see, e.g., United States v. Molina-Solorio*, 577 F.3d 300, 307-08 (5th Cir. 2009) (speedy trial violation when government failed to rebut presumption of prejudice and when other factors weighed heavily in

12

defendant's favor, even without showing of actual prejudice); *United States v. Erenas-Luna*, 560 F.3d 772, 779-80 (8th Cir. 2009) (three-year delay from government's negligence meant district court erred in not presuming prejudice); *United States v. Ingram*, 446 F.3d 1332, 1339-40 (11th Cir. 2006) (over two years intolerable even without showing actual prejudice because first three factors all weighed heavily against government).

This is not a situation where the government pursued the defendant with "reasonable diligence" to cause his speedy trial claim to fail, even were the court only to look at the latter 20-month delay. *See Doggett*, 505 U.S. at 656 ("reasonable diligence" generally will cause speedy trial claim to fail without "specific prejudice to his defense"); *United States v. Hills*, 618 F.3d 619, 632 (7th Cir. 2010) (if government shows "reasonable diligence in prosecuting its case, a defendant who cannot demonstrate prejudice with specificity will not show a Sixth Amendment violation, no matter how long the delay").

Bearing in mind the presumption of innocence (only with the state charges undone by his guilty pleas), Mr. Cummins cannot be said to be responsible for the delay, particularly over the last 20 months, for he never requested a continuance and instead already had clearly requested a speedy trial. *Compare United States v. Gunter*, 77 F.4th 653, 658 (7th Cir. 2023) (when defendant causes the delay, he "must make a specific showing of prejudice [] to establish a Sixth Amendment violation"), *with United States ex rel. Mitchell v. Fairman*, 750 F.2d 806, 808 (7th Cir. 1984) (the "longer the delay and the more vigorous the defendant's demand to be tried speedily . . . the less harm (of whatever type) to himself the defendant need show").

In fairness, from the point of presumed prejudice the record of actual prejudice is softer than not, but not inexistent. The court examines prejudice "in light of the interests the Sixth

Amendment seeks to protect." *Harmon*, 721 F.3d at 883 (quotations and citation omitted). There are three identified interests: "[1] to prevent oppressive pretrial incarceration; [2] to minimize anxiety and concern of the accused; and [3] to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The third is the most important "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. These consequences matter even for defendants who are not incarcerated pretrial because they must "liv[e] under a cloud of anxiety, suspicion, and often hostility." *Id*. at 533.

Mr. Cummins cannot show oppressive pretrial incarceration. For one, he was incarcerated on state charges—he wasn't in federal custody—and he remains under a state sentence that will foreseeably surpass his federal case. *See Ashburn v. Korte*, 761 F.3d 741, 753 (7th Cir. 2014); *West*, 689 F.3d at 753. So nothing by way of delay has caused him to languish in jail any longer than he otherwise would have. For another, his argued loss of a concurrent sentence, an issue that also troubled the Supreme Court in 1969, *see Smith*, 393 U.S. at 378, has not been impacted by any post-indictment delay. Without prejudging sentencing decisions when there has been no federal conviction, the state convictions and alleged federal conduct don't overlap, so any prospect of a concurrent sentence with this in mind would be speculative, not least given the law that has existed since 1984. *See* 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.").[3] The law also affords the court other options to address such an issue should it ever materialize. *See* 18 U.S.C. § 3553(a). For now, there is no prejudice based on oppressive pretrial incarceration.

---

[3] The loss of a concurrent sentence is often speculative at best when considering pre-indictment delay under the Fifth Amendment too. *See United States v. Fuzer*, 18 F.3d 517, 520 (7th Cir. 1994); *see also United States v. Madden*, 682 F.3d 920, 929 (10th Cir. 2012); *United States v. Uribe-Rios*, 558 F.3d 347, 358 (4th Cir. 2009); *United States v. McCoy*, 977 F.2d 706, 711 (1st Cir. 1992); *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1051 (9th Cir. 1990).

This doesn't mean that his quality of living while in state custody has been unaffected. *See Barker*, 407 U.S. at 533 (court may consider other factors too). After all, "the conditions under which he must serve his sentence [] worsened, by the pendency of another criminal charge outstanding against him"—namely, this one. *Smith*, 393 U.S. at 378. He would qualify—and would have seemingly qualified a year ago—for a lesser security level at the Indiana Department of Corrections (IDOC) but for the federal detainer occasioned by the indictment.

Of note, the IDOC aims to assign offenders to the least restrictive custody level possible and requires personnel to reclassify offenders as soon as reasonably possible if information changes to facilitate that goal [92-1]. As part of that goal, offenders have annual reclassification hearings, and Mr. Cummins saw his lower classification denied in January 2024 because of his active federal detainer [87-1]. He currently is classified as Level 2, but he argues that he would have qualified for a reduction to Level 1.

Offenders under a Level 1 classification generally experience more liberty of movement, more personal freedom for such things as programming, and lower rates of violence than those under a Level 2 classification. These conditions would impact Mr. Cummins' daily life while incarcerated. Only a free person might stumble and call this inconsequential. Even if neither classification is oppressive in the true sense for someone duly convicted, it goes without saying that one is more stringent and demanding than the other. The government might counter that this detainer would have existed anyway had it only filed a complaint rather than procured an indictment; at the same time, had the government acted with reasonable diligence in March 2023, this case would reasonably have been over by January 2024. There is some actual prejudice here. *See Smith*, 393 U.S. at 379 (detainer may be "corrosive" to "prisoner's ability to take maximum

advantage of his institutional opportunities"); *cf. Oriedo*, 498 F.3d at 600-01 (finding three years of pretrial confinement "created some of this sort of prejudice").

The court thus turns to whether the post-indictment delay minimized or exacerbated any anxiety or concern by Mr. Cummins. This can be tough to judge in a vacuum, and the law infrequently focuses for long on this consideration. After all, when a defendant offers nothing more than general assertions, this factor merits little weight. *Hills*, 618 F.3d at 632. Still, anxiety and stigma "inevitably attach to arrest and indictment," so the court must not treat it lightly. *United States v. Macino*, 486 F.2d 750, 753 (7th Cir. 1973); *see also Barker*, 407 U.S. at 533 (acknowledging that accused individuals live under "a cloud of anxiety, suspicion, and often hostility" even when not incarcerated).

The court has little more than general claims of anxiety here, but something can be said of the letter in October 2022 (followed a second time in November 2022) that Mr. Cummins was concerned enough that he wrote to request a speedy federal trial. *See Barker*, 407 U.S. at 531 ("strength of his efforts will be affected . . . by the personal prejudice, which is not always readily identifiable, that he experiences"). These pleas going unanswered would reasonably cause a person who has been indicted some concern. For all this indicates in late 2022 (when his state cases were ongoing), feebler assertions of anxiety explain why he never wrote again for upwards of two years thereafter. Whereas one period might support a finding of some anxiety, the other period tends to belie a sense of anxiety, or perhaps suggests his interests had realigned to be more comfortable with any further delay. In the end, the court finds little cause to weigh this claim of anxiety anything but modestly.

To bolster the impression of anxiety, Mr. Cummins argues that his federal indictment interrupted substance abuse treatment. The court gives this no real weight. The record establishes that Mr. Cummins completed his substance abuse program. Indeed, he filed a motion claiming that he had done so [89-2]. Mr. Cummins is right that his doctor recommended that he continue to attend peer support groups as needed [89-2]. A seamless continuance into peer support groups might well be preferred, even recommended, but the record offers no indication that Mr. Cummins experienced anxiety or developed concerns about not attending such groups.

Thus to the last factor the court goes—"the possibility of impairment of the defense." *Gunter*, 77 F.4th at 657-58. Mr. Cummins makes no concrete or specific showing why his defense at this point has been impaired, so there is no actual prejudice on this prong.

The government jumps on this. It argues that the evidence includes videotape of Mr. Cummins selling methamphetamine to a customer. This fairly cuts both ways. For if the case really were as simple as presenting video of a transaction, the government loses even more ground in trying to explain why it took so long to prosecute a simple "street crime" on video. *Barker*, 407 U.S. at 531. And the government, represented by skilled prosecutors, knows the obvious—that even a video often isn't enough to prove a crime beyond a reasonable doubt. Indeed, the court has seen an acquittal in a case involving multiple videos of alleged offenses. Film of the alleged crime isn't license to delay a trial because the government knows that its evidence (and, critically, its evidence alone) will stand the test of time. This prong concerns the defendant's ability to present an unimpaired defense, not the government's ability to present an unimpaired prosecution. *See United States v. Velazquez*, 749 F.3d 161, 185 (3rd Cir. 2014).

Naturally some defendants are perfectly willing to delay a trial to let memories fade and evidence to be lost, *see Richardson*, 780 F.3d at 817, but Mr. Cummins was not one, at least at the start. He was isolated in state prison and powerless, without federally appointed counsel and without discovery from the government for over three years, to learn about the government's case against him or to investigate or prepare a defense. *See Smith*, 393 U.S. at 379-80; *see also Barker*, 407 U.S. at 532 ("what has been forgotten can rarely be shown").

"To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Doggett*, 505 U.S. at 657. Though the delay here was not as excessive as some, *see, e.g., id.* at 652 (8.5 years); *Dickey*, 398 U.S. at 37 (8 years); *Smith*, 393 U.S. at 375 (over 6 years), a delay of 42 months on the circumstances of this record crosses the divide, not least when for over 17 of these 42 months the government sat demonstrably idle. "[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim" because "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655. The law's "toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial." *Id.* at 657 (citation omitted).

And when something of the "major evils" that the speedy trial guarantee guards against have manifested, *United States v. Macdonald*, 456 U.S. 1, 8 (1982); *Marion*, 404 U.S. at 320, as they have on this record, even if modestly, by impacting Mr. Cummins' incarceration status and personhood, the court finds enough prejudice that, when added to all the other factors that already favor Mr. Cummins, demonstrates that his speedy trial right was violated.

CONCLUSION

Accordingly, the court GRANTS the motion to dismiss [86] and DISMISSES WITH PREJUDICE the indictment against Mr. Cummins under the Sixth Amendment to the United States Constitution.

SO ORDERED.

January 14, 2025                             *s/ Damon R. Leichty*
                                             Judge, United States District Court